Our second case today is Gomez-Villatoro v. Loretta Lynch. We're pleased to have counsel here for that case. You may be seated. And then Mr. Desdoux, I mispronounced your name, and I'm sorry, but we're happy to have you here, sir. You're representing the petitioner. Yes, Your Honor. May it please the Court, my name is Jasper Desdoux, counsel for petitioner. Your Honor, the petitioner in this case was a 16-year-old in Honduras when her family began to be threatened by gangs demanding extortion payment because of the religious preaching of her father and her brother in a small Pentecostal church in Honduras. The gangs threatened the petitioner directly by telephone, telling her that if her father did not stop preaching against them in church, that they would face the consequences. Ultimately, the gangs said, in order to humiliate the family, that they must pay an extortion so they can demonstrate to everybody in the community that nobody can stand up against them. Eventually, the father of the petitioner was killed, and one year later, the brother was also murdered. Would a family meet the definition of a social group? Yes, Your Honor. So would that be the social group that you would rely on? Yes, that's the social group I'm relying on, Your Honor. The petitioner does not claim that she is a preacher or that she even holds the religious belief of her father and her brother, but she claims that she's associated because of her family relationship with the beliefs that her father and her brother held. There are two issues in this case. First is whether the immigration judge is correct in his determination that... Let me stop you. This is Judge Shedd. This is Judge Shedd. I want to go back to the family as a class claim. Is that claim she's making derivative of her father and brother's religious acts? There are two parts to that, Your Honor. One is the religious act, and second is even if we accept the government's argument that this is only based on their refusal to pay and the gang's interest in taking the property of the family, then it is also because of her association with the family, Your Honor. Did you make that claim anywhere in your arguments, in your brief? The second part, I did not make directly, Your Honor, but that is the logical conclusion of the government's argument. If they refute my argument that is the religious affiliation, then the natural result of the argument is that if the gangs were interested in taking over the property of the family, then anybody that is... I know. Let me say this, but I want to get this straight because I think you make a very good point. You did not make any claim about family as a protected group based on wealth. Is that correct? That's correct. But the government did in fact at least impliedly put that on the table when they refuted your religious claim, correct? That's correct. Okay. Thank you. Right. So there are two issues in this case, whether the petitioner met the burden of proof with regard to asylum, and second, whether the petitioner is entitled to protection under the United Nations Convention Against Torture. Let me address the second part quickly. Now, in considering cap protection, the standard is more than likely or not whether the petitioner will face torture in her home country of Honduras or degrading treatment. In making that determination, the court is required by statute to look into whether or not there are mass or gross violations of human rights in the country. The court is also required to look into the relevant information with regard to country conditions. And the record in this case is replete with information that shows that there's gross and mass violations of human rights. In fact, the State Department report clearly states that there's widespread perception that the government is incapable or unwilling to deal with the corruption that is in the system. The State Department report cites a particular situation that the anti-corruption agency, for over a period of 10 years, had more than 5,000 cases that were filed with it and was only able to prosecute 60 cases. So if you look at the situation in the country, the country condition, which is very dire, combined with the specific experience of the petitioner in this case, you cannot but come to the conclusion that the petitioner is entitled to protection under the CAC provisions. Mr. Zedu, this is Judge Shedd again. I want to take you to your specific religious claim. Didn't the immigration judge find that there was no such religious acts by the claimant's brother? That was a determination on the evidence. Didn't the I.J. make that determination? No, Your Honor. The I.J. never said that the father did not engage in the preaching that the petitioner has claimed. In fact, the I.J., like I pointed out in my brief, never even addressed the affidavit that is provided by the petitioner, which is her strongest circumstantial evidence. That needs to be refuted or discredited by more than mere baseless speculation or supposition. I can look at the record in a second, but I thought, for instance, the I.J. said in the other affidavit she supplied, nobody mentioned that preaching. No, the I.J. did comment on that, I thought. He did comment on that. Are you saying that he didn't comment on that? No, that is in the government's briefs, not in the I.J.'s determination, Your Honor. Okay. Well, isn't your asylum claim a better claim than the cat claim? Your Honor? Could you repeat the question, please? Isn't your asylum claim a better position than your cat claim? Well, I think both of them are very strong claims, Your Honor, because the I.J. did not specifically, the I.J. specifically found her testimony to be implausible only on the basis of an error in or a misapprehension of what she said. This petitioner was 16 years old at the time of these events in Honduras, and the I.J. asked her whether she knew whether her pastor was threatened by the gangs, and she said she did not know. Now, the I.J. took that to mean that she said the pastor was never threatened by the gangs. The I.J. also asked her if she knew anybody in the community that was specifically threatened by the gangs, and she said she didn't know. Now, that does not mean that that was not taking place. In fact, in the letter that was provided by the pastor of the church, he specifically talks about the condition in the country, and then he uses, you know, what I call code language that Christians use. He says that what is happening is what is predicted to be, and that is essentially to say that the righteous will be persecuted by the unrighteous. And let me also tell the court that the pastor subsequently provided another document to the mother, which is in the file of the mother's case now, specifically saying that the father and the brother were killed specifically for the unrighteous. So what you have then is a situation where the I.J. rejected the claim of the petitioner because he misapprehended what she said. She never said nobody was threatened. She never said the pastor was never threatened. All she said was she did not know, and the I.J. could have addressed that point by saying, okay, fine, how does a 16-year-old behave with regard to this situation compared to the petitioner? There's nothing that I can see that makes a 16-year-old such that the 16-year-old should be able to appreciate the particular circumstances of people in her community. She has general information, but not specific information with regard to specific individuals in the community. So the evidence that is provided by her mother, the affidavit that's provided details the circumstances of their family. And let me also point out to the court that the petitioner and her mother came here after the death of their father, of the father, to rest. Now, they hoped that the situation would have been taken care of by the death of their father. If that is really the case, that it was just only an issue of refusal to pay, then that would have been the end of it. But when they went back to Honduras, the brother of the petitioner was murdered as well. And that's the point that I was making just a few minutes ago, that if you accept the government's argument that this is only a refusal to pay, then it means that the gangs are interested in dealing with the family to the extent that anybody that is associated with that family and petitioner is a member of that family, and they're not going to rest and stop until everybody in that family is wiped away. That's not, Mr. Nezu, that's not exactly correct. Because while there may be a family connection, that, by the way, you didn't raise it, you didn't raise it, so that wasn't explored. But it could be not that it was family connection, but it was control of wealth connection that happens to be family, but it need not be family. So I don't know that that's necessarily family as recognized by the Fourth Circuit. But if you look at the argument the government has made that this is just mere refusal to pay, if you also agree with them that the family is wealthy, which the family really is, then it means they have the capacity to pay, right? So if they have the capacity to pay, then the question is, why wouldn't they pay? It is only a deep moral objection to paying extortion that would cause them not to pay. And then the question is, did they communicate that to the gangs? It seems to me to be baffling that they will have an objection against paying extortion to the gangs and not communicate that to the gangs. And if they communicated that to the gangs, then Elias Zakarias tells us that we don't need to engage in the Acosta prong of analysis. And that is to say, do the gangs have an interest or motivation to overcome that objection? Is that objection one that is known or could have been known by the gangs? Do the gangs have the capacity to overcome the objection by force? And are they inclined to do so? And clearly in this case, the answer to all those questions are yes. I'd like to reserve, if the court has no questions, the remaining time for rebuttal. That'll be fine. Thank you. That'll be fine. You have a seat there. We're going to hear from the Attorney General's lawyer, who is Ms. Tyler. Good morning, Your Honors. Good to have you here. Thank you so much. It's my pleasure to be here. May it please the Court, my name is Julia Tyler and I represent the Attorney General in this matter. Your Honors, I'd like to address a couple of things that came up during Petitioner's Counsel's presentation. One is to follow up on a statement, a question by Judge Shedd. Petitioner did not discuss a particular social group that was not intertwined with the religious preaching. For example, before the immigration judge, she claimed that her fear was one of persecution based on the religious belief of the father and the brother and not of the family or based on wealth alone or as the family as an island. In his reply brief, Petitioner's Counsel noted that she fears harm on account of her membership in a particular social group of her own. Although there are a couple statements in Petitioner's brief regarding whether or not it was uncontroverted that the father and brother were preaching, I want to make very clear that the immigration judge and the board's decisions found her not credible on the issue of whether there was preaching at all. And because they found her not credible, the argument being that it was finding being that it was implausible that he would be preaching about not paying extortion to the gangs. Because there was no preaching, therefore, there could be no persecution by the gangs motivated by such preaching. This other issue of family based on wealth is, you know, frankly, a new theory that has been advanced. I would also point out Petitioner's... Let me say this. Let me say this. Yes, Judge Shedd. It's a theory that you actually raise in your brief. It's a theory that you do raise it when you discount the... I'm not saying what legal standing that means, but I look very hard to find the family as a wealthy family status. And the only place I could really find that was in your brief where you discount the religious activities and say the only other basis then would be extortion. That is extortion. That is wealth against the family. That's the best argument that's been made, because that's basically about the only argument that's been made on family as wealthy. Correct? Yes, but I would just point out, Your Honor, that in this courtroom, the court has recognized a involved a relationship to another person. So, for example, in Crespen, Judge King, you were on the panel in Crespen. You found that there was a particular social group by virtue of the family's relationship to persons who agreed to testify at trial against gang members. Now, in two cases, Cornejo Avalos, again, Judge King, you were on that panel. This court was confronted with a particular social group of the Avalos family, and denied the petition for review because the agency properly found that the motivation of the gang was prompted by a desire to extort money and not the petitioner's membership in a particular social group. And again, in Contreras v. Holder, this court rejected persecution of a particular social group of families who resist extortion from MS-13 or other gangs. And the court agreed the petitioner failed to show that the family was targeted by gangs for any reason other than the gang's desires to increase their own coffers. So, in the times when this court has recognized a particular social group based on family, it has a nexus. It has a... But have you recast his allegation? I do not believe so, Your Honor. Not at all. In order to try to cite your cases there... No, no. ...that you say are going to help you. But once you recast his, you've got a better argument, don't you? Well, again, I think that ultimately the case hinges on credibility. But you're the one saying it's all about money. He's saying it's all about religion, right? He is saying it's all about... It is all about religion. And because the immigration judge and the Board of Immigration and Appeals found her not credible on the issue of preaching at its most base level, then the rest of the case falls away. But you're saying it's all about money. You're saying it's all about money. I think... Well, I think that the motivation of the gang is a secondary argument. If it wasn't preaching, which is, frankly, the basket in which he has placed his... her eggs, which is that she was persecuted as a member of a family based on her relationship with her father and her brother who preached against paying extortion, the immigration judge found that finding not credible. So there is no other basis. Now that the court, the agency did say that they found that actually the motivation was extortion, not this other... In addition to not being credible, there is... It just doesn't make any sense. And I think time and time again, you'll see that the substantial evidence does support the immigration judge's credibility finding. I'm happy to... I would like to go back quickly to Petitioner's counsel's point about misapprehending her testimony. I think it's very clear in the board's decision that he was very clear that she... He understood. She was not aware of any of these things going on. But again, if you look at the record, I think it's quite clear she was asked, do you know if any members of your church had any problems with the gang? No. Did anyone else in your town have a problem with the gangs? No. Did anyone... Was anyone in your town or your church ever asked for money? No. And in your high school, were there efforts by gang members to recruit other high school students? No. So I think it's clear that all the agency was saying is talking about what she's aware of. But again, and this ties into the deference owed to the immigration judge. This is not the immigration judge's first rodeo when it comes to an MS-13 gang case. And this court is well familiar with these gang cases as well. Children at ages of 16, 17, and sometimes as young as 14 are keenly aware when their friends are being recruited by MS-13 gang members. Sadly and cruelly, it is the young that are most aware of the scourge of gangs in their community. And the fact that she was absolutely bald-faced, unaware of any gang activity led the immigration judge to conclude that the concept that they would be preaching about something that she was completely unaware of and doesn't seem to be a particular problem in her community was implausible. That is flatly supported by substantial evidence. In addition to that... If we accept that the immigration judge and the BIA, they've rejected an argument based on religion. Correct. Because, and that appears to be, it really is the argument that the claimant's making in briefs. I looked at it very closely. That's their claim. They claim she's entitled to the religious nexus because of family. The religious activities of her brother and father should be imputed to her. That's straight out of their reply brief. Exactly. Now, if we, but I want to, so you think that as far as the claim they've made, the claim she's made on religious protection, you think that has been dealt with and she loses because of legal reasoning and comments by the IJ, correct? Correct. And this court, sorry. Now, let's turn to the family connection by way of wealth. Do you think that that claim was never made? Or do you think even if it were raised, it's not successful here? What is your argument on that? I would make two arguments. One, I don't think it was ever raised. And secondly, I don't think this court needs to get to it because it was waived. And thirdly, this court has never recognized a particular social group based on a wealthy family. As a matter of fact, this court has rejected that in two unpublished decisions. Yeah, I know that, but I would suspect that it depends on the facts and circumstances. I believe wealth and family could provide the basis, could under the right circumstances. They could. There's no law in this circuit that says that is not at all possible. There's no law that says that. There's no law that says that. I'm just pointing out that the unpublished precedent in this court when they have examined that precise scenario. As you know, that certainly doesn't prove a negative because the unpublished precedent says it wasn't in that case. It doesn't mean you can't have it sometime. And so I don't know how you stand on that. But what would you say? I know you think, and I think you may be correct, that the other side has not raised the family as a wealthy entity argument. And that waiver argument was made in our brief. Well, I thought the IJ made a finding that she was a member of a particular social group of her immediate family, and that was never challenged. I think it was challenged secondarily with regard to the nexus, that she was not persecuted because she was a member of a family. She was persecuted because that group of individuals had money. So for example, Your Honor, if they had been a family of squatters living on land where there was no living on someone else's land, they would not have been persecuted. They would not have been extorted of money. Contrarily, if they were unrelated individuals living on a wealthy commune, they might well have been extorted. Again, the issue isn't in this case whether or not a family can be a particular social group. The issue in this family is whether or not petitioner has articulated a nexus. On the one hand, because there was no preaching and there is no credibility, then we know that that falls. And secondarily, we know that the motivation of the gangs is a quintessentially factual question. And the immigration judge in this case found that the motivation of the gangs was not based on her membership in a particular social group. It was based on wealth. And she never raised a marriage of those two, Judge Shedd. She never said wealthy family. She never said a family that is wealthy, correct. She never said that. That was never the articulated social group of hers. But in response to the question of whether or not she was a family member, and I'm sorry, that is correct. She argued that she was in a family group for protection purposes. But isn't it true that the only argument she made is she was entitled to family protection based on her family's religious activities? Exactly. Exactly. And because she was not found credible, because substantial evidence supports that finding, the rest of it falls away. You said that she was found not credible. She was. With regard to that aspect. Was that the credibility determination? I think here's what I want to figure out. Was that based on the fact that the ALJ decided she was lying or that her information, the information that she presented was inadmissible hearsay or speculation that she lacked personal knowledge of the facts? What was the credibility thing tied to? I mean, you could be not credible because you really didn't have personal knowledge of what you're saying. Your Honor. Or you can be not credible because you're just making that stuff up. I think it's closer. I think it's the former. Which one? And I'll tell you. The former is what? The former that she was not being honest with regard to the preaching. She made it up. With regard to the preaching. And I would take issue for, in Petitioner's opening brief, he makes a statement that there were no omissions, no contradictions or inconsistencies of Petitioner's oral testimony. Why don't you just answer his question? I'm sorry. He asked you why. Why don't you just tell us why, based on the record? You think the judge found that she was not being honest. What did the judge say about it? Well, I'll be happy to tell you. First, the judge found it completely implausible that someone would be preaching about a problem that didn't seem to be a problem in the community. Second, the immigration judge noted that she testified that she had no idea what her father was preaching about. That's quite a stunning admission. Secondly, that she never saw any of his texts. So how does she know what, you know, never saw any of the what? Never saw any of the texts, the text messages that both her father. So you're saying she lacked personal knowledge that they were hearsay to her. I think it's more than that, Your Honor, because if you compare Petitioner's first. Like I'm saying, they snaked in some inadmissible evidence in the district and the judge said he wasn't going to I think is important. If you examine Ms. Gomez's first asylum statement, the first affidavit that she provided with her first I-589 and her mother's first statement, and you compare that to the second statement she provided and the second statement that her mother provided, the first statement contains nothing about preaching. And I encourage the court to go back and look at the record that is in the record evidence here, because we are talking about a totality of evidence in the record. It is not until the second statement by Ms. Gomez and the second statement by her mother that there is any reference to preaching. As a matter of fact, in the first statement, although there is a religious. Did the ALJ said he's to go back to chance and follow up on my question. Did the ALJ say explain that that was the reason he found her credible? Or are you explaining that for the ALJ? Your Honor, he did not specifically cite that. The ALJ didn't explain it that way. He did not. The only reason how you figured it out, you're explaining it to us. I'm raising. We can figure it out, too. I'm raising it as well as you can. I'm raising it, Your Honor, because there I believe there is a misstatement in petitioners opening brief that there were no inconsistencies, et cetera, between her testimony and the record. For example, what did you say that in your in your brief? Did you say they were inconsistent? That was not mentioned in the brief. Well, that's what that was. That was the time that you should have said that. Well, the other the other I think there's another issue here, and let me just get back to. Let me let me ask you this. I'm surprised at your kind of lack of answer to my question. I'm sorry. I thought you would point to the IJ order in which he says at page seven. And by the way, opposing counsel talked about this very point. He says that there are 40 to 45 people in the congregation and in the respondent's testimony, she was not aware of any problems that any members of the congregation or the minister had with the gang. I thought that's that's the basis for your claim that and the IJ's claim that they didn't believe there was a preaching problem because she was not aware of anybody else in the church or congregation having any problem. Why isn't that the strongest point he made? May not be the strongest point, but it certainly seems stronger than what you're saying. Well, it is. It is important that that there seemed to be she seemed to be keenly unaware of any gang problem in her community, therefore making it implausible. I would also point out that the board noted that none. No, it's not. No, no, no, no. You're missing the point. I think it's not unaware of gang problems in her community. It's that the gangs were not based on it looks to me like the saying based on her testimony, she's not aware of the gang taking retribution against anybody else in the church. So that makes it less likely they would take in retribution against her family for religious purposes. Isn't that the clear import of that statement by the IJ? I think I think what the immigration judge was saying was that there didn't seem to be anything for them to be preaching about. In other words, if she didn't know what he was saying in his sermons and she was completely unaware that anyone in the community was being extorted, then why was her father and her brother preaching about something that didn't seem to be a problem in your community? The second half of this, however, judge said, is what the board noted as well, based on the based on the evidence in the even none of them mentioned there being a problem with gangs in the community. Therefore, what are they preaching about? You don't usually preach about a problem that isn't a problem in your small community. And while gangs are a problem throughout Honduras, they aren't necessarily a scourge in this small community or with respect to the basis of your argument is there's no extortion or effort to collect money by gang members. That's the basis of the government's no, it's it's that it's that it was implausible that he would be preaching. And in addition, she provided a no, no, no, no, no. You just said it's implausible. He would be preaching about something for which there was no evidence. So that's what you are. She's completely unaware of. And none of the letters that she's provided. They all say I'm aware of. She's not aware. Didn't she say that she heard she would be killed if she didn't pay money? Didn't she say that that is targeting of them specifically? Not not. You said extortion in the community. That's what you just said. It's quite frankly, I think you crossing your argument up or else you haven't thought about it clearly. I don't understand that. When I pointed out what I thought was perhaps the strongest argument that there was not a religious purpose for any retribution, you discounted that by saying, no, that's because there's no extortion to preach about. That's what you just said. Well, Your Honor, that's how you answer my question. Your Honor, it is very clear that the immigration judge found it implausible and that she was not credible about the issue of whether or not there was preaching. And I think you can see that when it is not confirmed or mentioned in any of the corroborative statements that she affirmatively provided. All of those statements mention that there that they were that that family was and the ant mentioned that they were specifically targeted because of their properties. It was an attempt to take the properties and the and the board found that very, very critical evidence. And again, the credibility determination is absolutely supported by substantial evidence in this case. But I go back and I just I can't see the clock. We may be out of time. I want you to answer one more time. Judge King was asking the same kind of questions. If there's not evidence of religious violations or retribution for religious acts, he said, is it hearsay? Is it inadmissible? Is she lying about it? And I ask you as well, what's the strongest statement in the IJ order to indicate that there is no basis to believe a religious connection? And I pointed out what I thought it was. And you seem not to think that. So what is in the order then as to religious as to religious retribution? I thought the strongest thing was when he said she said at testimony that she was not aware of any problems that any members of the congregation or the minister had with the gang. You don't think that strong your opposing counsel does, because if you listen to his argument, he said she didn't say it didn't exist. She just said I wasn't aware of it or something like that. He tried to discount that. You look confused, but that's not what he said. I apologize. I am. I am. No, I will answer. What's the strongest evidence or strongest statement describing the evidence in the record in the IJ's order to indicate that there is no religious retribution? You agree that he thought that, don't you? Yes, I do. And on and in the record at page 53, the immigration judge says the court simply does not find it plausible that the father and the brother would be preaching to persons, none of whom, according to the respondent, or at least none of whom which whom was the respondent aware of any extortion efforts by members of this relatively small congregation? I have read that sentence. I'm not sure I can completely follow that. That is in the it is in the order. And then and then the immigration judge goes on to the minister and said he has had no problem, according to respondent. And I would point out that the board felt it necessary to point out that there was no problem that the pastor mentioned in the pastor's own letter with regard to the community being there being extortion. So the pastor wanted pastor obviously didn't think it was a big enough problem to put in his to put in his statement other than the crime that is bringing our country down. But he doesn't specifically remember the pastor's letter doesn't even confirm that these two individuals, the father and the brother, are members of the congregation at all and certainly doesn't corroborate the issue that there was preaching. So there is a confluence of evidence and a confluence of omissions from the corroborative evidence that established that she was not credible on the issue of whether or not there was preaching. I see my time has expired, Your Honor. Thank you so much. Yeah, Mr. Zedu. Thank you, Your Honors. Yes, sir. I see that the government did not address the cat issue. But let me just point out to the court that in her brief, she does say that the country condition is, quote unquote, mixed condition. So she acknowledges that there's a serious problem in Honduras. And I want to say again, that if you look at the country condition that is stated in the State Department report, and look at the particular experience of this family, the logical conclusion is that more than likely, she will face torture or harm when she goes back, if she goes back to Honduras. Now, let me address the question, again, that seems to be pertinent in this case. I want to go back to the question that the IJ asked the petitioner in the court. The question was not, are you aware of your pastor or anybody in the church having problems? The question was, do you know if your pastor was threatened by the gangs? Do you know anybody else that was threatened by the gangs? These are specific questions. For a 16-year-old, I don't see what the difficulty is in saying, I don't know. How many 16-year-olds run around worrying about what other people are going through in their community? Now, she has general information that the problem is going on, of course, but she did not know specifically if the pastor of the church had been threatened. That is information that the adults in the congregation obviously would know better. I don't know if the court would have been happier if she lied and said, yes, my pastor was threatened, but she answered truthfully. Like I said in my brief, the court at no point... But the ALJ says she wasn't credible. Because, again, the point was not that there was no problem in the community. She never said there was no problem in the community. But the ALJ, she says she's not credible. Does that mean that neither side can rely on her testimony? No, no, Your Honor. He just makes a general statement, she's not credible. That means that neither of you can rely on her. You can't just cherry pick things after the ALJ has said she's not credible. The ALJ is undermined. So the government can't go back and cherry pick and say, well, we'd like to put this one over here. You can't go in and say, I like this one over here. The ALJ says she's not credible. But what I'm arguing, Your Honor, is that it is not because that's an analysis that the ALJ should have undergone to say why a 16-year-old should have known that her pastor was threatened by the gangs. Wait a minute, this is judge said, but the ALJ did find her credible on issues, didn't he? He found her credible on some issues. Yes, Your Honor. He didn't say she was uncredible and she was not credible across the board. He said she's credible on some things, but on some things, her testimony is not credible. Isn't that correct? But that determination of... But isn't that correct? Isn't that correct? It is, Your Honor, but the judge's specific determination of implausibility is based on a misapprehension of what she actually said. Like I said... No, it's not. He can take that when she said, I do not know. He can take from that a reasonable inference to say in this small church with her family involvement, it's reasonable that she would know. That's all he did with that. That one word doesn't end it or begin it. It just allows the judge then to take that and a reasonable inference from her testimony, doesn't it? Well, I don't know, Your Honor, because the specific question that she was asked was, do you know if your pastor was threatened? That's a very specific question. I know that, but the judge would be entitled to take from her no answer a reasonable inference. That may not be the only inference, but a reasonable inference would be in that smaller church of 45 people that her parents, that her father and brother were deeply involved in, according to her, that she would at least know if something else was happening to another person in congregation. You may disagree with that, but that doesn't mean that that's an unreasonable inference. Well, I will say there's nothing inherently implausible for a 16-year-old not to know specific situations of people. Now, the other point that I mentioned is that the government keeps saying there was no other evidence in their record supporting her claim. Clearly, her mother provided an affidavit, and the judge did not discredit the mother's affidavit, which this court requires him to do in Camara. So, you know, it is baffling to me that... I think there was also the issue of, you know, whether or not it was third-hand evidence that she had, and it wasn't direct. In her affidavit, she does say that she and members of her family were called by the gangs, were texted by the gangs, so she does have direct knowledge of the threats to her family. The question about not knowing what the gangs said to her father was specific to whether her father showed her the text messages that he received. But she does say in her affidavit that she herself would receive phone calls, that she herself received text messages threatening that if her father did not stop preaching, that they will come after the family. Your red light, Yvonne. Thank you, Your Honor. We appreciate it. Appreciate it.
judges: Robert B. King, Dennis W. Shedd, Henry F. Floyd